NelsoN, J.,
delivered the opinion of the court.
Defendant was appointed guardian of the three original complainants, who were the minor children of John Matlock, deceased, on the 7th day of October, 1852, by the County Court of McMinn county, and also of Elizabeth Matlock, their sister, who died in 1857 intestate and without issue. He made annual settlements with the County Court until the 7th May, 1865, and this bill was filed on the 3d February, 1866, to surcharge and falsify said settlements, and to obtain an account and final settlement, in the Chancery Court *36 at Athens. An account was ordered by the Chancellor, and, from the Master’s first report, it appears that the fund which came into defendant’s hands in October, 1852, and which consisted chiefly of cash and cash notes, amounted to $22,321.35, which, with compound interest and certain small sums realized from the rent of a house and lot, amounted on the 7th May, 1867, to $44,812.12. The disbursements of the guardian, including certain - allowances made to him by the County Court for his services, amounted, as shown in said report, to $33,941.36, and the claims on hand and in suit, to $11,082.75. Exceptions to the Master’s report were sustained, and a new account ordered by the Chancellor; and the Master made a second report, in which the aggregate results previously ascertained were not materially varied, except as to the guardian’s compensation. The compensation allowed by the County Court was fixed at each settlement, the rate per cent, being variéd, but amounting in the aggregate, as charged in the bill, to $5,777.87. In the first decree ordering the account, the Master was directed to ascertain what would be a reasonable compensation, and in doing so, to regard the settlements as prima fade, evidence of their correctness, but liable to be modified or set aside by other proofs introduced by either of the parties. In the second decree the Master was 'directed to allow the guardian five per cent, commissions on the gross amount received by him when the estate came into his hands, five per cent, on the amount of interest collected by him from year to year, and five per cent, on the amount of *37 interest which he paid out from year to year. The amount of compensation reported in obedience to said second decree was $4,482.01, and the last report was affirmed by the Chancellor, and defendant’s exceptions thereto disallowed.
The question principally discussed in this court is as to the compensation; and upon this it may be observed that, while the Act of 14th of February, 1860, c. 34, declares that the compensation of ordinary trustees shall not exceed five per cent., the provisions of the Code, ss. 2356 and 2532, which declare that the administrators, executors, and guardians shall be allowed a reasonable compensation, without limiting the amount for their services, remain unchanged. In the Code, s. 1976, it was declared that trustees should réceive five per cent., and, by s. 3664, that their fees for selling and collecting should be the same as allowed by law to clerks and masters in chancery. Although this apparent incongruity doubtless caused the passage of the Act of the 14th of February, 1860, it may well be supposed that a principal reason for limiting the compensation of trustees for the benefit of creditors to a sum not exceeding five per cent., and for prescribing no limit as to guardians .and personal representatives, was that the duties of the former are generally prescribed by the deeds or other instruments under which they act, and are comparatively few in number, while those of the latter, although in many particulars defined by statute or regulated by fixed principles of law, are infinitely diversified by the peculiar nature of different estates. It is often more *38 troublesome to adjust the affairs of a small estate, consisting of notes, accounts, and unsettled dealings and transactions, when books have been irregularly kept, or when there are no books at all, than to settle a large and extensive business which has been systematically conducted; and a reasonable compensation would be proportionally much greater in the one case than the other. No inflexible rule, alike applicable to all estates and circumstances, could perhaps be justly prescribed either by the Legislature or the courts, but the rate of compensation, which depends upon our statute, and not upon the statutes or decisions in other States, should, in each particular case, be determined by the extent of responsibility, the nature of the services rendered, and other causes difficult to limit or define. It was no doubt the intention of the Legislature to confide much to the discretion of the County Courts in the settlements of estates; and this discretion would, in many cases, be materially aided by the local and personal knowledge of the justices. The settlements made under their direction, although subject to supervision in other tribunals, are frequently binding and conclusive. It is expressly declared that they shall be taken as prima faeie correct: Code, s. 3786. If made in the mode prescribed by law, they should not be disturbed, except upon clear and satisfactory evidence. The Code provides that the County Court shall have full power to take cognizance of all matters concerning minors and their estates, and that it shall have original jurisdiction in the settlement of accounts. See ss. 2493, *39 4201. And although it is enacted that the powers of the Chancery Courts over such estates are not hereby abridged by s. 2493, it is provided by s. 4204 that the County Court, in cases of concurrent jurisdiction, is vested with all the incidental powers belonging to, or conferred by law upon, the court with which its jurisdiction is concurrent. It follows, therefore, that a settlement properly made in the County Court is not an idle form or a dead letter; and, in the case under consideration, we are not prepared to hold that the accounts taken in the County Court have been surcharged and falsified as declared by the Chancellor, or that he had the power virtually to change at a subsequent term the first decree.
Although the statute (Code, ss. 2525, 2526) requires the guardian annually to exhibit an account of the profits and disbursements of the estate of his ward, and directs the Clerk of the County Court to enter in particular books, provided and kept for that purpose only, the guardian’s accounts, it does not direct at what time the County Court shall, in its discretion, make a reasonable compensation and allowance to the guardian for. his trouble and expenses in settling the business: Code, s. 2532. In this case the County Court made an annual allowance, and this is believed to be the usual practice. It would not, in a large majority of cases, be practicable to secure the services ■ of competent guardians, if the payment of their compensation should be postponed to the termination of a guardianship usually ending after a long series of years, and the provision as to annual ac *40 counts seems to imply that the allowances shall be made at the close of each year.
It appears from the settlements in the County Court that for the first two years and seven months of his guardianship, a gross allowance of $1,380 was made to the guardian, being nearly 2-£ per cent, on the aggregate fund in his hands; that, for the years 1855 and 1856 an allowance of 1 per cent, was made; that, for the year 1857 it was about lj, and for the years 1858, 1859 and 1860, about If- per cent; and for the subsequent years, until the 7th of May, 1865, about 2 per cent. These allowances, including those made by the Master in his first report, for the years 1865 and 1866, amount, as shown in said report, to $6,416.74.
In the Master’s second report, it is shown that the total amount of the principal received by defendant was $23,407.52; that the amount of interest collected by him, or with which he was chargeable during the fourteen or fifteen years of his guardianship, was $21,322.60, and that he has actually paid out, or otherwise adjusted the sum of $27,680.65, much the larger part of which was paid to or settled with the complainants. The amount of assets remaining in defendant’s hands at the date of the first report was $11,082.75, and at the date of the second $12,717.46, the difference being mainly caused by the different amounts allowed as compensation in the two reports, and that his balance consists chiefly of debts in litigation.
It is strongly insisted for defendant that the County *41 Court, being a court of concurrent jurisdiction, and expressly invested by law with a discretion over the entire subject of compensation, had full power and authority to determine the question; and that in the absence of fraud on the part of the guardian in procuring the allowance, its action could not be reviewed or annulled by the Chancery Court, and could only be corrected, if at all, by a direct appeal to a superior jurisdiction. The decision of this question would, perhaps, involve an examination of previous decisions upon analagous statutes, and a discussion of the provisions of the Code already cited, and it is unnecessary, upon the facts of this case, finally to determine it. As already indicated, this court is of opinion that there is no satisfactory evidence to show that the discretion of the County Co"urt was improperly exercised. Various witnesses were examined in this cause, among them two of the Justices of the County Court, and it is satisfactorily shown that the allowances were fixed by the court itself, and not made, as charged in the first instance, by the guardian; and in the opinion of a majority of the witnesses, they were not exhorbitant or unreasonable in view of the magnitude of the estate, the great responsibility resting upon the guardian, his prudent and faithful management of the business and his having accounted for compound interest as to much the largest part of the fund. One of the complainants attained his majority in 1861, another in 1863, and the complainant, Martha, in December, 1865. The first two have received all, or the greater part of their shares of the estate; and large sums *42 were paid to the last. The defendant insists in Ms answer that he delayed the collection of the claims due the estate because the complainants, or some of them, irrsisted upon payment in gold, and because if he had pressed their collection during the civil war, he would, in all probability, have been compelled, under Gen. E. Kirby Smith’s military order, to receive Confederate notes in payment. He states that he offered to hand over to the complainants all the claims in his hands; that he never refused to account with them, but that they were disposed to exact gold and not even to receive United States Treasury notes, and to contest the amount of his compensation, and that for these causes no final settlement was made with them. These statements are verified in part by evidence appearing’ in the record, and all the circumstances establish their correctness. Various suits were commenced by the guardian in the spring of 1865, to enforce -the collection of the outstanding claims, and as two of the wards came of age during and the other soon after the termination of the war, the guardian was well warranted in delaying the suits, as well as his final settlement, until after its close.
After a careful examination of the entire record, including the various settlements made by the defendant, as well as the reports of the Master in the Chancery Court, we are satisfied that this large estate was managed with more than ordinary prudence, integrity and care and that the Chancellor erred in not confirming the first report of the Master, and making it the basis of his decree. Although the allowances *43 to tbe guardian are liberal, they are not, in view of tbe peculiar circumstances of tbe case, extravagant, and do not amount to one-third of tbe interest actually realized. While estates should not be wasted in extravagant allowances to guardians, a due regard to the best interest of minors requires that faithful and competent men should not be deterred from assuming the fearful responsibilities of the office by the apprehension of inadequate remuneration for their services.
Where the profits of a ward’s estate are more than sufficient to educate and maintain him, it is expressly provided by the Code, s. 2513, that the guardian shall lend the surplus, and all other sums of money of the ward in his hands, upon bond with good and sufficient security, etc.; and, by s. 2514, that an assignment of such bonds to the ward, at his majority, shall be a discharge of the guardian for so much. These provisions manifestly indicate that the guardian is required to keep the fund at interest until the ward arrives at age, and that a reasonable period should be allowed for collection after that time, if the ward does not receive the bonds. It is, perhaps, the true meaning of the statute that the guardian may assign the bonds in extinguishment of his liability. It certainly was not the intention that the ward should demand gold at the moment of reaching his majority; and we hold that the Chancellor erred in pronouncing a decree against the guardian for the claims in suit.
We held, in MeGaughy v. Berg, 4 Heis., 695, that the late civil war should be regarded as having terminated *44 on the 26th day of July, 1865. The bill in this case was filed, as already stated, on 3d February, 1866, while several of the suits, brought on the bonds as soon after the termination of the war as the courts were open, were still pending and undetermined, and we would, perhaps, declare that the present bill was, under the circumstances of this case, prematurely filed, and in view of the information furnished by the settlements in the County Court, without adequate reason, but for the fact that both parties, in their pleadings, submit to an account. It appears in evidence that various suits at law and in Chancery were brought to enforce the collection of bonds due the guardian; and instead of rendering a decree against him for the full 'amount of these unliquidated claims, orders should have been made, from to time, for their payment to the parties entitled; and a decree should have been pronounced directing the Master not only to take an account as between the complainants and the defendant, but between the complainants themselves, so as to determine accurately whether either has been overpaid or what amount is coming to each.
It does not appear from the record that there was any negligence, in view of the delay created by the civil war, on the part of the guardian in putting the claims in suit; but this cause may be remanded to the Chancery Court at Athens, with leave to the complainants to establish, if they can, by evidence, that any of the claims have been lost by the negligence of defendant.
Let a decree be pronounced reversing all the dc- *45 crees of the Chancellor subsequently to that of 29th May, 1867, ordering the account and affirming the Master’s first report of the account; and let the cause be remanded for the purposes above indicated and for taking such further accounts as may be necessary. One half of the costs in this court shall be adjudged against complainants, and the other against defendant, and the costs in the court below shall be paid as the Chancellor may hereafter direct.